LABORDE, Judge.
Plaintiff, Carl J. Bellard, filed a “Petition in Suit on Open Account” against three defendants seeking to recover $15,252.46 plus legal interest and attorney’s fees for accounting services provided to the defendants. The three defendants are H. Brown Machine Shop, Inc. (the Machine Shop), H. Brown Supply House, Inc. (the Supply House), and H. Brown Pension Plan (the Pension Plan). Plaintiff died prior to trial.[1] H. Brown also died prior to trial. An answer was filed on his behalf by his widow, Evelyn McGee Brown, the executrix of his succession. After trial on the merits, the lower court found for the plaintiff on all three claims. The court denied plaintiff’s claim for attorney’s fees. The defendants now appeal. We affirm.
FACTS
Carl J. Bellard’s firm did accounting work for the defendants. On November 10, 1980, Bellard sent bill number 3726 to the Machine Shop. The bill totalled $11,-822.50. The bill contained the following itemization of work done:
“1. Federal and State Income Tax Returns for fiscal year ended 6-30-80.
2. Adjusting and closing entries for fiscal year ended 6-30-80.
3. Help set up new accounts on computer with computer agent.
4. Federal and State estimated Income Taxes for fiscal year ended 6-30-81.
' 5. Internal Revenue Service, conferences with Internal Revenue Agents on Tax Notices and payments of *1251 taxes on Fiscal years ended 6-30-74 through 6-30-77.”
H. Brown’s son, Curlin Brown, and the employee charged with paying the corporate bills, Otis Aguillard (who was also deceased by the time of trial), received this bill and noted that it was for an amount much higher than the amount paid in previous years. Aguillard and Curlin Brown decided to increase the amount of the bill from the prior year by 20% (due to inflation) and to pay this amount. H. Brown Machine Shop, Inc. thus paid $6,370.04 of the bill. This left a disputed balance of $5,452.46. On July 3, 1981, Bellard mailed bill number 4123 to the Machine Shop. This bill totalled $6,200.00 which was itemized as follows:
“1. Set up depreciation schedule on computer
2. Trained new employees on how to use new computer
3. Issuing of stock certificates to children
4. Estate tax planning and research
5. Set up new accounts on computer
6. Went to New Orleans to Internal Revenue Service to settle tax accounts with Internal Revenue Agents on back years returns
7. Help set up payroll on new computer
8. Completions of Federal and State Corporation Income Tax Returns for fiscal years ended June 30, 1978 and June 30, 1979”
Bellard added this amount with the prior balance and arrived at an outstanding balance allegedly owed by the Machine Shop of $11,652.46. The Machine Shop disputes the entirety of this balance.
On November 10, 1980, Bellard also sent bill number 3727 to the Supply House. The bill totalled $3,460.50 and contained the following itemization of work done:
“1. Federal and State Income Tax Returns for fiscal year ended 6-30-80
2. Adjusting and closing entries for fiscal year ended 6-30-80
3. Help set up new accounts on computer with computer agent.
4. Federal and State estimated Income Tax for fiscal year 6-30-81
5. Internal Revenue Service, conferences with Internal Revenue Agents on Tax Notices and payment of taxes on fiscal years ended 6-30-74 through 6-30-77”
The Supply House did not dispute this amount and paid it in full on April 8, 1981. On July 3, 1981, Bellard sent bill number 4124 to the Supply House. The bill totalled $3,200.00 and contained the following itemization of work done:
“1. Set up Depreciation Schedule on Computer
2. Trained new employees on how to use new computer
3. Issuing of stock certificate to children
4. Estate tax planning and research
5. Went to New Orleans to Internal Revenue Service to settle accounts with Internal Revenue Agents on back years returns
6. Completions of Federal and State Corporation Income Tax Returns for fiscal years ended June 30, 1978 and June 30, 1979”
The Supply House disputes the entirety of this alleged $3,200.00 balance and has made no payments toward this amount.
On May 4, 1981, Bellard sent bill number 3760 to the Pension Plan. This bill totalled $400.00 and was itemized as follows:
“1. Plan Status Forms
2. Employees’ Census Record Forms
3; Analysis of Retirement Plan, Side Fund”
The Pension Plan disputes the entirety of this balance and made no payments toward this amount.
Based upon the disputed amounts, much correspondence was exchanged between Bellard and the attorney for the Brown Companies. Ultimately Bellard filed suit against all three companies claiming that the following balances were owed:
*1252 H. Brown Machine Shop, Inc. $11,652.46
H. Brown Supply House, Inc. 3,200.00
H. Brown Pension Fund 400.00
Total $15,252.46
The trial court determined that Bellard adequately proved his claims and awarded him (or his estate) $15,252.46.
PLAINTIFF’S EVIDENCE
The only witness presented by the plaintiff was Cynthia Marie Guidry. Guidry was the senior account supervisor for Bel-lard. She stated that she did the specific work on the Brown accounts. Bellard would then review what Guidry had done. Guidry was also in charge of billing. She testified that the firm billed customers on an hourly basis. The hours worked each day were recorded on daily time sheets. The hours worked, as indicated on the time sheets, were then posted to the particular client card for each account. Clients were subsequently billed based upon the amount of hours worked as indicated on the client cards. Detailed descriptions of exactly when the listed services were performed and the hours spent on these services could only be determined from the accounts receivable files or the daily time logs. However, Guidry testified that the accounts receivable files and the daily time logs were either destroyed (by the firm that purchased Bellard’s firm after his death) or given to Bellard’s family upon his death. Thus the only records which were available to prove Bellard’s claim were the client cards and the bills sent to the Brown Companies. Plaintiff also introduced a box containing voluminous files detailing the work done for the Brown Companies.
Defendants contend that the records necessary to determine the dates, hours worked, and the particular projects performed, were the daily time logs. Defendants point out that only the client cards and bills were introduced to support plaintiff’s claims. Since these documents merely summarize the information provided by the time logs, a proper foundation was not laid to show how and from what sources these records were prepared and the records are hearsay.
EVIDENTIARY RULINGS
In the present matter Guidry testified that she did much of the work on the Brown Companies’ accounts. She detailed the work that was performed and introduced a box of voluminous records containing the files of the Brown accounts. The bills and client cards of the Brown Companies were then introduced into evidence.[2] Also, as previously stated, Guidry discussed in detail the procedure used by Bel-lard in determining clients’ bills. We find that Guidry’s testimony laid a sufficient foundation for the introduction of these records into evidence.[3]
Defendants also contend that the client cards and bills should not have been admitted into evidence because they were hearsay. In LaSalle Pump & Supply Co., Inc. v. Louisiana Midland Railroad Co., Inc., 433 So.2d 745 (La.App. 3d Cir.1982), writ denied, 435 So.2d 450 (La.1983), we discussed the business records exception to the hearsay rule under Louisiana jurisprudence. We stated:
*1253 “The requirements of the exception may be summarized as follows: (1) persons concerned with recording the information must be unavailable for testimony, or production of such persons would be a needless burden; (2) the first collected record available or useable by the court is introduced; (3) the records are identified at the trial by one familiar with the bookkeeping procedure; and (4) the evidence seems reliable in light of the following factors (a) contemporaneousness of the entry with the occurrence recorded, (b) firsthand knowledge of the entrant, (c) existence of a business or professional duty to record or report the facts in the regular course of business, (d) completeness and honest appearance of the books, (e) absence of fraud in making the entries or in destroying the supporting memoranda and (f) perhaps whether the book belongs to a third party.”
Id. at 748.
In the present matter, Guidry was in charge of the billing for Bellard and her secretary posted the figures from the daily time logs onto the client cards. Although the original time logs had been destroyed, Guidry’s testimony provided sufficient support as to the accuracy of the client cards and bills that summarized this information. Defendants were allowed to cross examine Guidry and records detailing the work done for the Brown Companies were available for defendants to review. Since the time logs were destroyed, these were the only records available to the court. The trial judge obviously considered the totality of the circumstances and found that the evidence (along with Guidry’s testimony) was reliable. We agree and hold that the records were properly admitted under the business records exception to the hearsay rule.
PROOF OF PLAINTIFF’S CLAIM
Defendants next claim that the evidence presented by plaintiff did not sufficiently prove the alleged amounts due for Bel-lard’s services. They contend that some of the bills seem to indicate that there was duplicate billing of the companies. They also contend that the 1980 bill for the Machine Shop ($11,822.50) was out of line with the bills for prior years and no explanation was given for the substantial increase in the amount.
The plaintiff in an action on open account must prove his case by a preponderance of the evidence. The amount of the account is a factual question and may not be disturbed absent manifest error. Texas Industries Inc. v. Roach, 426 So.2d 315 (La.App. 2d Cir.1983).
In the present matter, Guidry stated that the work for the Brown Companies was done several years ago and it was impossible for her to remember exactly what work was done. She did review all of the bills and client cards and described what the listed work entailed. Plaintiff also provided all of the Brown Companies’ files. Guidry explained that in 1979 or 1980, the Brown Companies’ computer was not properly posting the companies’ accounting records. This caused problems with the companies’ tax returns and these problems had to subsequently be resolved through meetings with I.R.S. agents. A replacement computer was purchased by the Brown Companies and plaintiff was required to rework the companies’ accounting records on this computer. As to the allegations of duplicate billing, Guidry explained that some of the work done was for all three of the Brown Companies. The charges for such work would be apportioned to the companies based upon the work done for each. She stated that they did not bill each company separately for the entire amount of the bill.
After reviewing the evidence and Gui-dry’s testimony, the trial judge concluded that the amounts claimed by plaintiff were adequately proven. The judge stated that Guidry’s testimony was reliable and sufficient under the circumstances. After reviewing the record, we find that the trial judge’s determinations were not manifestly erroneous. Plaintiff presented all available evidence and Guidry testified to the full extent of her memory. She gave as much *1254 information as she could under the circumstances.
For the foregoing reasons, we affirm the trial judge’s judgment in awarding plaintiff all amounts claimed against the defendants. Costs of this appeal are taxed to defendants.
AFFIRMED.

. By motion filed in this appellate court, Russell J. Bellard, Sr., Carleen Bellard Hidalgo, Michelle Bellard Diesi, A.J. Bellard, Michael Carl Bellard, and Richard Bellard were permitted to be substituted for the deceased plaintiff in this appeal.

. Defendants assert that the client cards supporting the bill of the Supply House were improperly admitted into evidence during cross examination of Guidry in defendant’s case-in-chief. Defendants claim that this evidence should only have been admissible during plaintiffs case-in-chief. Guidry attempted to find the client cards during direct examination in plaintiffs case-in-chief, but was unable to do so in looking through the voluminous accounting records. She later found these during cross examination in defendants’ case-in-chief. The trial judge allowed the client cards into evidence. This was not an abuse of his wide discretion.

. We note that on direct examination Guidry did not state by whom the records were prepared. Defendants objected claiming that a proper foundation was lacking. The trial judge overruled the objection. On cross-examination, Guidry stated that she did all of the billing for Bellard. She also stated that her secretary posted the figures from the daily time logs onto the client cards. This information should have been initially provided when laying a foundation on direct examination. However, since it was subsequently given on cross examination, we find that admission of the records on direct, if error, was harmless error.